United States District Court
Southern District of Texas

**ENTERED**

October 22, 2015

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| MELISSA STEVENSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. G-12-259 |
| | § | |
| CAROLYN W. COLVIN, Commissioner | § | |
| of the Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Before the Court, with the consent of the parties, is Plaintiff's Motion for Summary Judgment (Dkt. Nos. 11, 12) and Defendant's cross Motion for Summary Judgment. (Dkt. No. 13). Having reviewed the submissions of the parties, the administrative record, and the applicable law, the Court concludes that Defendant's Motion for Summary Judgment is denied, that Plaintiff's Motion for Summary Judgment is granted, and that this matter is remanded to the Commissioner of the Social Security Administration for further proceedings.[1]

## I.  BACKGROUND

On May 3, 2010, Plaintiff Melissa Stevenson (Stevenson) submitted an application for disability insurance benefits (DIB) under Title II of the Social Security Act.  In her application,

---

[1] The Court pauses to note that after the briefing in this case was completed, Plaintiff's counsel informed the Court that the Social Security Administration (SSA) found Stevenson disabled by letter dated May 17, 2013. (Dkt. No. 15).  Plaintiff's counsel further informed the Court that Stevenson was found disabled as of April 21, 2011 – the date of the ALJ's decision which is under review herein.  However, given the pendency of this action, the Program Operations Manual Systems (POMS) precluded the agency from "invading the time period adjudicated by the ALJ," consequently, the earliest date which could be established in the subsequent claim was April 22, 2011. (Dkt. No. 15).

Stevenson alleged that her disability began on June 12, 2010, and was due to Type 1 diabetes, epilepsy and seizures. (Transcript (Tr.) 17, 61, 111, 129). After Stevenson's application for DIB was denied initially and on reconsideration, she then requested a hearing before an Administrative Law Judge (ALJ).

In March 2011, Stevenson, accompanied by her husband, personally appeared and testified at a hearing that was held by ALJ Susan Soddy. (Tr. 28-60). On April 21, 2011, the ALJ issued her ruling. (Tr. 17-23). In the decision, the ALJ determined that Stevenson met the "insured status requirements of the Social Security Act through December 31, 2014" and that she had "not engaged in substantial gainful activity since January 21, 2010, the alleged onset date." (Tr. 19). At Step 2, the ALJ found that Stevenson had a severe impairment, which was "seizure disorder." (Tr. 19). Proceeding on, the ALJ found at Step 3 that Stevenson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20). The ALJ then determined that Stevenson had "the residual functional capacity to perform a full range of work at all exertional levels except she cannot work around unprotected heights and/or dangerous/moving machinery. She cannot climb ropes, ladders or scaffolds. She cannot work at any job that requires driving." (Tr. 20). At Step 4, the ALJ then determined that Stevenson was "capable of performing past relevant work as a loan officer and a mortgage company underwriter" and that "[t]his work does not require the performance of work-related activities precluded by [her] residual functional capacity." (Tr. 22). The ALJ, therefore, concluded that Stevenson had "not been under a disability, as defined in the Social Security Act, from January 21, 2010, through the date of this decision." (Tr. 23).

2

Stevenson appealed the adverse decision to the Appeals Council and submitted additional documents for consideration. The Appeals Council, however, denied Stevenson's request for review on July 13, 2012. As such, the ALJ's decision being the final decision of the Commissioner of Social Security (Commissioner). (Tr. 1-5).

Pursuant to 42 U.S.C. § 405(g), Stevenson filed this action seeking judicial review of the final decision of the Commissioner denying her claim for DIB. (Dkt. No. 1). Stevenson's challenge to the administrative decision concerns the ALJ's failure to properly consider the severity of her conditions (*i.e.*, diabetes and hypertension). (Dkt. No. 12). Stevenson also challenges the ALJ's determination of her RFC on the following grounds: (1) the ALJ failed to properly consider and weigh the opinion of her treating doctor that the causes of her fatigue and sedation effects were the result of her impairments and the medications she was prescribed; (2) the ALJ failed to consider the side effects of her medications; and (3) the ALJ's failure to consider the side effects of her medications resulted in the ALJ finding Stevenson's subjective complaints not fully credible. (*Id.*). The Commissioner, in contrast, contends that substantial evidence exists in the record to support the ALJ's decision, that the decision comports with applicable law, that any deficiency in the ALJ's written decision constitutes harmless error, and that the decision should be affirmed. (Tr. 13).

## II. LEGAL STANDARD

Judicial review of a denial of disability benefits "is limited to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir.1999); 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla, less than

a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather, its role is to scrutinize the administrative record to determine whether substantial evidence is present. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carrier v. Sullivan*, 944 F.2d 105, 109 (5th Cir. 1991).

## III. DISCUSSION

The Court addresses the issues raised in this case through the framework the five-step sequential process.[2] When determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) the subjective evidence of pain and disability as testified to by the claimant; and (4) the claimant's educational background, work history and present age. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

### A. Step Two

At Step two of the sequential process, the ALJ must consider whether the impairments alleged by the claimant are severe. 20 C.F.R. § 404.1520. As explained by the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone v. Heckler*, 752 F.2d 1099, 1101, 1104-05 (5th Cir. 1985); *see also, Sweeney v. Astrue*, 2010 WL

---

[2] The Social Security Administration uses a well-established five-step process to determine whether an individual is disabled. See 20 C.F.R. § 404.1520(a)(4). The steps must be followed sequentially and, if at any step the Commissioner determines that the claimant is disabled or not disabled, the evaluation ends. *Id.*

4

6792819 at *5 (N.D.Tex.2010).

In the present case, the ALJ determined that Stevenson's seizure disorder was a "severe" impairment, however, she determined that Stevenson's diabetes and hypertension were both "nonsevere impairments." (Tr. 19). In her decision, the ALJ explained that she found these conditions to be "nonsevere" because both "are controlled with medications and do not cause functional limitations." (Tr. 19). Stevenson challenges the ALJ's determination that her diabetes and hypertension were not "severe" impairments. (Dkt. No. 12 at 12-15). She argues that the ALJ based her determination on erroneous assumptions (i.e., that her impairments were controlled with medications), which is not supported by substantial evidence in the record. (Dkt. No. 12 at 12-15, 25).

After carefully considering the record in this case, the Court concludes that Stevenson's contention has merit. In particular, despite Stevenson's compliance with the treatment prescribed, as well as her doctors' continuous efforts to achieve control over her diabetes (Tr. 290, 353, 360, 568-569, 570, 571-572), the medical records show significant fluctuations in her glucose levels (Tr. 233, 244, 245, 252, 262, 269, 272, 290, 302, 305, 366, 376, 370, 430, 438, 440, 442-443, 445-446, 473, 523, 530, 555, 563), which reflects that her diabetes was not, in fact, controlled by medication. (Tr. 245, 252, 305, 427-428, 430). The medical records also reflected that one of Stevenson's doctors – a specialist – considered her diabetes to be "brittle"[3] because, regardless of the treatment, Stevenson continued to experience wild swings in her glucose levels. (Tr. 244, 252, 305). Furthermore, consistent with these medical findings, there was evidence before the

---

[3] While considered an outdated term, "brittle" is used to describe insulin-dependent diabetes that is characterized by wide, unpredictable fluctuation of blood glucose values and, hence, difficult to control. Dorland's Illustrated Medical Dictionary, at 456 (28th ed.). Brittle diabetes, while now referred to as "labile diabetes," signifies "uncontrolled" or "unstable" type 1 diabetes. Id.

ALJ – albeit from Stevenson herself – regarding the functional limitations her condition imposed. For example, Stevenson testified that her uncontrolled diabetes caused her to miss work and made her feel "out of it" and/or drowsy to the point of not being aware of what was going on around her. (Tr. 41). She also attributed her symptoms of lethargy, dizziness and sweating with her low blood sugars. (Tr. 36, 41).

Similarly, the medical records are replete with evidence that, despite attempts to regulate it with different medications and/or doses, Stevenson's hypertension/hypotension remained uncontrolled. (Tr. 44-45, 241-242, 252, 257, 305, 317). In addition, consistent with this medical evidence, was evidence of the functional limitations posed by her condition. For example, Stevenson testified that due to her uncontrolled blood pressure she felt dizzy, lightheaded and she had to sit down to avoid passing out. (Tr. 44-45). Stevenson also testified that she had fallen several times and she attributed this to her low blood pressure. (*Id.*).

Because substantial evidence does not support the ALJ's determination at Step 2, the Court concludes that Stevenson is entitled to summary judgment as to this point of error.

## B. Residual Functional Capacity

Before proceeding on to Step 4, the ALJ was required to assess Stevenson's residual functional capacity (RFC).[4] The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. Soc. Sec. Ruling 96–5p (July 2, 1996). The ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir.1995). The RFC assessment must be based upon "*all*

---

[4] If the impairment is severe at step 2, but does not meet or equal a listed mental impairment at step 3, then the Commissioner must conduct a residual functional capacity assessment before proceeding on to the remaining steps. See 20 C.F.R. § 404.1520(a)(4).

6

of the relevant evidence in the case record," including, but not limited to, medical history, medical

signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay

evidence, recorded observations, medical source statements, and work evaluations. Soc. Sec.

Ruling 96–8p, 1996 WL 374184 (July 2, 1996) (emphasis in original); *see also, Hollis v. Bowen*,

837 F.2d 1378, 1386-87 (5th Cir. 1988). The ALJ is not permitted to "pick and choose" only the

evidence that supports her determination. 20 C.F.R. § 404.1545; Soc. Sec. Ruling 96–7p (July

2, 1996); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

In the present case, the ALJ determined that Stevenson had the RFC to perform a full range

of work at all exertional levels with the following exceptions: she cannot work around unprotected

heights and/or dangerous/moving machinery; she cannot climb ropes, ladders or scaffolds; and

she cannot work at any job that requires driving. (Tr. 20). Stevenson contends the ALJ erred

when determining her RFC because the ALJ rejected, without good cause, the opinion of her

treating physician; the ALJ failed to consider the side effects of her medications and this error,

in turn, led the ALJ to conclude that her subjective complaints were not entirely credible. The

Court discusses the issues in turn.

### 1. Opinion of Treating Physician

The law is clear that "ordinarily the opinions, diagnoses and medical evidence of a treating

physician who is familiar with the claimant's injuries, treatment, and responses should be accorded

considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)

(citing *Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir. 1984); *Smith v. Schweiker*, 646 F.2d 1075,

1081 (5th Cir. 1981); *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981); *Fruge v. Harris*, 631

F.2d 1244, 1246 (5th Cir. 1980)). "[T]he ALJ is free to reject the opinion of any physician when

the evidence supports a contrary conclusion," (*Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995)), however, the ALJ cannot reject a medical opinion without an explanation supported by good cause. *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000). In addition, the ALJ is not permitted to simply "pick and choose" only the evidence that supports her decision. *Id.*

A review of the decision reflects that while the ALJ acknowledged Dr. Varner's opinion dated December 29, 2010, she wholly rejected the doctor's opinion on the basis that "speculation as to employability carries no valuable probative weight, and the ultimate determination of disability is specifically reserved to the Commissioner pursuant to SSR 96-5p." (Tr. 21-22, 545). It is, of course, true that an opinion that Stevenson was "disabled" or "unable to work" would carry no special significance because it involves a legal conclusion reserved for the Commissioner. 20 C.F.R. § 404.1527(e); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir.2003). Problematically, however, Dr. Varner's opinion was not so narrow. Instead, Dr. Varner, as Stevenson's treating physician, expressed the opinion that the fatigue and sedation effects that Stevenson experienced were due to her medications and her impairments. (Tr. 545). The ALJ did not establish "good cause" for wholly rejecting Dr. Varner's opinion, which was consistent with the objective medical evidence[5] on the issues related to the interaction of Stevenson's medications and her impairments. *See Scott*, 770 F.2d at 485. Nor did the ALJ make any pretense about applying the regulatory

---

[5] The medical records reflect that Dr. Varner diagnosed Stevenson with a complex seizure disorder and treated her with Trileptal, initially at 150 mg. twice a day, but Dr. Varner increased the dosage to 300 mg. twice a day and, despite Stevenson taking the medication as prescribed, the dosage was then changed to 150 mg. three times a day. (Tr. 436, 438, 441). Consistent with Stevenson's testimony, Trileptal has known side-effects which include fatigue, dizziness, and somnolence. Additionally, Stevenson was diagnosed with type I diabetes and, despite the insulin pump, she experienced hypoglycemia which, consistent with Dr. Varner's opinion and Stevenson's testimony, can cause shakiness, dizziness, sweating, confusion and difficulty with attention. Finally, while not referred to by Dr. Varner in her opinion, Stevenson was diagnosed with labile hypertention and treated with Metoprolol which can cause, among other side-effects, low blood pressure, fatigue, dizziness and confusion.

factors to weigh Dr. Varner's opinion. The Court, therefore, concludes that the ALJ erred by failing to properly consider, evaluate and weigh the medical opinion of Stevenson's treating physician. *See Fraga v. Bowen*, 810 F.2d 1296, 1304 n. 8 (5th Cir.1987); *Fruge*, 631 F.2d at 1246.

## 2. Side Effects of the Medications & Credibility

An ALJ is required to consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. 20 C.F.R. §§ 404.1529(c)(3)(iv); SSR 96–7p; *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir.1999). In addition, the ALJ's RFC assessment "must be based on all of the relevant evidence in the case record," including "the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." SSR 96–8p.

There is no dispute in this case that Stevenson is required to take a large number of medications, including Trileptal, Insulin, Gabapentin, Benicar, Metropolol and Tramadol. (Tr. 132, 169-171, 245). Fatigue, drowsiness and dizziness are listed among their common side effects. (*See* Dkt. No. 11 at 18-19). The record documents that Stevenson complained of extreme fatigue, drowsiness and dizziness on several occasions and even testified at the hearing that she experienced these side effects and several others. (Tr. 36-37, 40-41, 43-45, 49, 241, 244, 252, 396, 424, 438, 454, 455, 468, 545, 559, 571, 569). The fact that Stevenson may not have specifically referred to her symptoms as "medication side effects" when she complained of them

should not negatively reflect upon her credibility.⁶ Accordingly, an evaluation of medication side-effects and any impact on Stevenson's RFC would have been appropriate in this case.⁷ The ALJ clearly committed error by failing to evaluate side effects or symptoms allegedly caused by medication and their impact on Stevenson's RFC. *See Brown v. Barnhart*, 285 F.Supp.2d 919, 935 (S.D.Tex.2003); *Harrison v. Colvin*, No. 3:13-CV-2851-D, 2014 WL 982843 (N.D. Tex. Mar. 12, 2014); *Bassett v. Astrue*, No. 4:09-CV-142-A, 2010 WL 2891149, at *13 (N.D.Tex. June 25, 2010).

The Commissioner, while acknowledging that the ALJ erred in failing to consider the side effects of Stevenson's medications, argues that any such error was harmless. *See Skidis v. Comm'r of Soc. Sec. Admin.*, No. 3:08-CV-2181-N, 2009 WL 3199232, at *11 (N.D.Tex. Oct.2, 2009) (explaining that "[h]armless error exists when it is inconceivable that a different administrative conclusion would have been reached absent error."). The Court cannot agree. The history of Stevenson's extensive medical treatment indicates the presence of impairments and the possibility of medication side effects that could render her disabled or at least contribute to a disability. *Loza v. Apfel*, 219 F.3d 378, 397 (5ᵗʰ Cir. 2000). The lack of consideration of the medication prescribed and taken by Stevenson, along with the evidence of her functional impairments also demonstrates that the ALJ's findings are not substantially supported by the

---

⁶ The Court pauses to note that it is entirely unreasonable to expect that a layman such as Stevenson should be required to determine that her symptoms are, in fact, due to "medication side effects" and report them specifically as such. Instead, the fact that she complained of the symptoms alone is sufficient.

⁷ The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. If the ALJ does not satisfy his duty, his decision is not substantially justified. *Boyd*, 239 F.3d at 708 (citing to *Newton v. Apfel*, 209 F.3d 448, 458 (5ᵗʰ Cir. 2000)).

10

record when viewed as a whole. The Court, therefore, concludes that remand is warranted.[8]

## CONCLUSION

Considering the record as a whole, this Court concludes that proper legal standards were not adhered to and the Commissioner's decision is not supported by substantial evidence. The Court, therefore, concludes that the Defendant's Motion for Summary Judgment (Dkt. No. 13) is **DENIED**; that Plaintiff's Motion for Summary Judgment (Dkt. Nos. 11, 12) is **GRANTED**; and that this action is **REMANDED** to the Social Security Administration pursuant to Sentence 4 of 42 U.S.C. § 405(g), for further proceedings consistent with the determinations made herein.

**DONE** at Galveston, Texas, this _____22d_____ day of October, 2015.

_____
JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE

---

[8] The Court pauses to note that to the extent the ALJ's analysis of Stevenson's credibility hinged on this issue, which appears to be the case, the ALJ's analysis was in error. Upon remand, the effect of medication side-effects should be considered in evaluating Stevenson's credibility and RFC.